Allen, P.
The only question presented for the consideration of the court by this appeal, is, whether the final decree directing the specific execution of the contract therein mentioned, by the appellant Samuel W. McKee, was correct. Other matters were put in issue by the pleadings, involving the construction of the contract and the privileges it was intended to confer; some proceedings were had which looked to a decision of these questions; and nearly all the testimony in the record relates to this branch of the controversy. When the case came on for final hearing, the court properly declined expressing an opinion on any part of the case made by the pleadings, except the right of the appellee Barley to a decree against the said Samuel, for a specific execution of the contract, so as to invest Barley with the legal title to the lot of land and the water privileges alleged to have been purchased by him from John T. McKee and Bratton and wife. All other questions of law and fact as to the effect of that legal title, the extent of the privileges conferred by it, and whether they had been abused, were left to the determination of a court of law with the aid of a jury, in the actions then pending, or which might be thereafter instituted.
It appears from the record that John T. McKee and his sister Mary Jane, the wife of Andrew Bratton, were seized as coparceners of a tract of land on Kerr’s creek in Rockbridge county, containing two hundred and eighty-one acres. Bratton and wife resided in Bath county; John T. McKee seems to have resided on or near the land, and to have had it under his charge. From the answer of the appellant Samuel W. McKee, it appears that in the year 1835 he rented the land from his father, the said John, and Bratton and wife; that he took possession thereof in March 1835, and has remained in possession ever since; and that on the 20th of May 1839, his father and Bratton *344 and wife conveyed the land to him in fee: And he files a copy of the deed with his answer.
Whilst the appellant thus held possession as tenant, the appellee, as appears from the answer of said appellant, made an abortive effort to obtain the privilege from him to raise his dam, and presented to him a deed which he had prepared for him to execute; alleging that John T. McKee had given to the appellant his moiety, and he would become the purchaser from Bratton and wife of the other moiety; but the appellant refused to negotiate with him on several grounds: one being that he had no title to the land. The appellee then said he would see John T. McKee on the subject, and left for that purpose: And in the after part of the same day, John T. McKee informed the appellant that he had signed an agreement for the sale of the small triangle, according to the provisions of the deed or agreement from John T. McKee to the appellee, referred to in the bill and answer as exhibit A. The deed was prepared to be executed by John T. McKee and Bratton and wife, but was signed by the former only; and taken in connection with a receipt given by John T. McKee to Barley of the 2d of December 1836, of the same date with the deed, for fifteen dollars, in part of the purchase money of a lot of land and other privileges bought of him and Brat-ton by the appellee, is evidence of a contract on the part of John T. McKee acting for himself and professing to act for Bratton and wife, to sell to Barley a small triangle between Kerr’s creek and a spring branch, containing, as appears by the survey made in this cause, 151.80 perches, with certain privileges set forth in the deed ; amongst the others, the privilege of turning the water out of the main channel of Kerr’s creek by means of a dam or otherwise, above a rock, (the corner on Kerr’s creek,) through a race to be cut through said lot.
*345 The authority of John T. McKee to act as the agent of Bratton and wife in this transaction, though averred in the bill, is denied in the answers, and is not proved. There is nothing, therefore, which would bind Bratton and wife to execute the contract. But it is clear as well from the deed of John T. McKee, which is valid as to him, though Bratton and wife did not execute it, and his receipt, as from the admissions in the answers of both the McKees, that the sale and purchase was not limited to John T. TcKee’s undivided moiety, but embraced the whole subject described in the deed. The deed itself, signed by John T. McKee, describes the land intended to be conveyed by metes and bounds; the receipt is for a part of the purchase money of the lot and other privileges sold to Barley; the answer of John T. McKee sets forth the negotiation as between himself alone and Barley, the execution of the deed A by him, and insists that Barley is entitled to nothing but what is provided for in the article: Thereby impliedly admitting that he is entitled by their contract to all the deed did profess to convey. This answer would not be evidence against the codefendants. But Samuel W. McKee in his answer, admits he was informed by his father on the day the contract was entered into, that he signed an agreement for the sale of this small triangle to Barley, and refers in his answer to the deed as showing the extent of Barley’s rights. In fact, so far from controverting the right of the appellee as acquired by the contract, the appellant Samuel, in another part of his answer, states that if he had limited himself to the privileges granted thereby, he never would have complained. The lawless abuse of the privileges alleged to have been conferred by the contract, is the principal ground upon which he objects to th'e appellee’s claim to relief. It is manifest, that whether John T. McKee was or was not the authorized agent of Bratton and wife, he un *346 dertook to sell and did sell to the appellee the whole subject described in the deed of the 2d of December 1836 ; and he, and those claiming under him, with full notice of his contract, are bound to comply with it, if it can be done without injury to the rights of the coparcener. The answer of the appellant shows he was fully apprised of the negotiation and sale, and the terms thereof: and the evidence proves that the appellee took possession of the lot of land purchased by him, and made use of it in the mode contemplated when he purchased by opening a race through it.
It was said in Robinett v. Preston,, 2 Rob. R. 277, that although a conveyance by one joint tenant of a part of the land might have no legal effeet to the prejudice of the cotenant, yet it would be effectual to pass the interest of the grantor in the tract. And if upon partition, the share assigned to the cotenant did not include the part conveyed, the cotenant would get all he was entitled to, and the grantor could not deny his deed. If upon a partition that part of the land described in this deed or affected by the water privileges, had been assigned to John T. McKee, he would have been in a condition to have executed his contract, if he would not, in that event, have been estopped by his deed from disturbing his vendee; and his son claiming under his subsequent conveyance with full notice, can occupy no higher ground.
A court of equity, in making partition, would have respected the rights acquired by a fair purchaser, provided no injury was done thereby to the coparcener. In this case the interest sold was small in extent and ©f little value. The triangle containing less than an acre, and the whole interest conveyed was valued by the parties at thirty dollars. The coparcener could have had his full share allotted in the residue of the tract. As the conveyance of both the joint owners to the appellant Samuel has invested him with the legal *347 title to the entire tract, he is now in a condition to perfect the title of the appellee, according to the terms of the contract, as evidenced by the deed of the 2d of December 1836, from John T. McKee, referred to as exhibit A. This is all the decree requires him to do, and I think it should be affirmed.
The other judges concurred in the opinion of Allen, J.
Decree affirmed..